| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | Trial Date:    March 10, 2015<br>Trial Time:    10:00 a.m. |

-----------------------------------------------------------------X

In re:

STANLEY ABRAHAM and AMY ABRAHAM,
                Debtors.

Chapter 7

Case No: 13-74398-reg

-----------------------------------------------------------------X

JANET STUART,

Plaintiff,

                v.

STANLEY ABRAHAM,

Defendant.

Adv. Pro. No. 13-08165-reg

-----------------------------------------------------------------X

## DEFENDANT'S TRIAL MEMORANDUM

TO:    THE HONORABLE ROBERT E. GROSSMAN
         UNITED STATES BANKRUPTCY JUDGE

Pursuant to the Court's Order dated January 13, 2015, directing the parties to file a joint pretrial memorandum in this case, the parties have conferred as required by Federal Rule of Civil Procedure 16, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7016, and together submit this joint pretrial memorandum setting for the issues to be tried before this Court on March 10, 2015, at 10:00 a.m.

### I.    NAME, ADDRESS, AND PHONE NUMBER OF WITNESSES

Janet Stuart – 115-52 223 Street, Cambria Heights, New York 11411 – 718-528-0408

Stanley Abraham – 5 Rhodes Dr. New Hyde Park, N.Y. 11040 –516-286-2595

Amy Abraham – 5 Rhodes Dr. New Hyde Park, N.Y. 11040 – 516-286-2595

### II.    LIST OF DEPOSITION WITNESSES

Stanley John 10 Old Shelter Rock Road, Roslyn, New York 11576

### III.    LIST OF EXPERT WITNESSES

None.

1

### IV.     **EXHIBITS**

#### a.    **ADMISSIBLE BY STIPULATION**

Joint Exhibit A – Voluntary Petition (Main Docket #1)

Joint Exhibit B – Employee Income Records Filed August 23, 2013 (Main Docket #5)

Joint Exhibit C – Employee Income Records Filed August 26, 2013 (Main Docket #8)

Joint Exhibit D – Employee Income Records Filed August 26, 2013 (Main Docket #9)

Joint Exhibit E – Amended Schedule B Filed September 27, 2013 (Main Docket #13)

Joint Exhibit F – Complaint Filed October 11, 2013 (Adversary Docket #1; Main Docket #14)

Joint Exhibit G – Certificate of Service Filed October 21, 2013 (Adversary Docket #3)

Joint Exhibit H – Motion for Default Judgment Filed November 20, 2013 (Adversary Docket #4)

Joint Exhibit I – Cross-Motion to Dismiss Filed November 26, 2013 (Adversary Docket #5)

Joint Exhibit J – Order Denying Motion and Cross-Motion Entered December 17, 2013 (Adversary Docket #7)

Joint Exhibit K – Initial Pretrial Order Entered January 3, 2014 (Adversary Docket #10)

Joint Exhibit L – Motion to Amend Answer Filed February 21, 2014 (Adversary Docket #13)

Joint Exhibit M – Order Granting Motion to Amend Entered March 27, 2014 (Adversary Docket #16)

Joint Exhibit N – Amended Complaint Filed March 27, 2014 (Adversary Docket #17)

Joint Exhibit O – Answer to Amended Complaint Filed April 2, 2014 (Adversary Docket #20)

Joint Exhibit P – Request for Production of Documents Filed April 3, 2014 (Adversary Docket #22)

Joint Exhibit Q – Request for Production of Documents, Interrogatories Filed April 8, 2014 (Adversary Docket #25)

Joint Exhibit R – Amended Statement of Financial Affairs Filed June 6, 2014 and Certificate of Service (Main Docket #23 and #24)

Joint Exhibit S – Amended Statement of Financial Affairs Filed June 12, 2014 and Certificate of Service (Main Docket #25 and #26)

Joint Exhibit T – Motion for Summary Judgment Filed August 29, 2014 (Adversary Docket #31)

Joint Exhibit U – Affidavit in Opposition Filed December 12, 2014 (Adversary Docket #33)

Joint Exhibit V – Reply Filed December 15, 2014 (Adversary Docket #35)

Joint Exhibit X – Order Denying Summary Judgment Entered December 22, 2014 (Adversary Docket #36)

Joint Exhibit Y – Final Pre-Trial Order Entered January 13, 2015 (Adversary Docket #37)

    b. **PLAINTIFF'S PROPOSED EXHIBITS**

None.

    c. **DEFENDANT'S PROPOSED EXHIBITS**

    **1.**    **Joint Tax Returns Federal and New York State of Stanley and Amy Abraham years , 2011, 2012,**

    **2. Citibank Statements July and August 2009 (4 pages)**

    **3.**    **Supplemental Summons and Complaint Index No. 20720/10 NYS Supreme Court, Queens County (17 pages)**

    **4.**    **Deposition Transcript of Janet Stuart taken 3/28/14 (63 pages)**

    **5.**    **Plaintiff's Response to Defendant's Notice of Discovery and Inspection (bate stamp indentified "JS000001 – JS 000094"**

    **6.**    **New York State Division of Corporations website printouts of**

**Defendant's corporations and llc's.**

V.    **OBJECTIONS TO ADMISSIBILITY**


VI.    **EXCHANGE OF EXHIBITS**

The parties represent that they have exchanged copies of all exhibits referenced herein prior to the filing of this pretrial memorandum.

VII.    **UNDISPUTED FACTS**

1.    On August 23, 2013 (the "Filing Date"), the Defendant, jointly with his wife Amy Abraham, filed a voluntary petition (the "Petition") for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York.

2.    On October 3, 2013, Allan B. Mendelsohn (the "Trustee") filed a Report of No Distribution.

3.    On October 11, 2013, the Plaintiff filed, *pro se*, an original complaint objecting to the dischargeability of her debt pursuant to 11 U.S.C. § 523(a)(2) (the "Original Complaint"). The Original Complaint was timely filed, because the deadline to object to the Defendant's discharge, or to the dischargeability of certain debts, expired on November 25, 2013.

4.    On February 21, 2014, the Plaintiff, by her undersigned counsel, filed a motion for authorization to file an amended complaint, which this Court granted on March 27, 2014. On the same date, the Plaintiff filed an amended complaint (the "Amended Complaint").

5.    The Amended Complaint relates back to the filing of the Original Complaint because all the facts and circumstances described herein involve the same transactions and occurrences that were contained in the Original Complaint.

6. This is an adversary proceeding in which the Plaintiff is objecting to the Defendant's discharge pursuant to sections 727(a)(4)(A) of the Bankruptcy Code, and seeking a determination of the dischargeability of the debt owed by the Defendant to Plaintiff pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

7. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and pursuant to the standing order of reference from the District Court for the Eastern District of New York.

8. Venue is appropriate in this court pursuant to 28 U.S.C. § 1408.

9. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) & (J), and in the event that this court determines that Article III of the Constitution prohibits this court from entering a final order in this matter without the consent of the parties, both parties have given such consent.

10. Plaintiff is an individual who resides at 115-52 223d Street, Cambria Heights, New York 11411.

11. Plaintiff is a creditor of Defendant.

12. Defendant is the Debtor in the above-captioned case and resides at 5 Rhodes Drive, New Hyde Park, New York 11040.

13. This is Defendant's third bankruptcy case

14. On September 4, 2012, Defendant, *pro se*, filed a voluntary petition seeking relief under chapter 13 of the Bankruptcy Code, which case was dismissed automatically pursuant to 11 U.S.C. § 521(i), although a creditor had filed a motion to dismiss the case with prejudice, which motion was never heard.

15. On November 20, 2012, Defendant, *pro se*, filed a second voluntary petition seeking relief under chapter 13 of the Bankruptcy Code, which case was also dismissed automatically pursuant to 11 U.S.C. § 521(i).

16. On July 21, 2009, Defendant received a $50,000 cashier's check from the Plaintiff, which cashier's check was deposited into his bank account at Citibank, N.A. On August 3, 2009, Defendant's bank account at Citibank, N.A. received a $25,000 wire transfer from Plaintiff.

17. When Defendant filed his joint voluntary petition under Chapter 7 of the Bankruptcy Code, he made the following declarations under oath:

    a. "I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 29 sheets, and that they are true and correct to the best of my knowledge, information, and belief." (Docket #1, ¶ 39).

    b. "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." (Docket #1, ¶ 48).

    c. "I declare under penalty of perjury that the information provided in this statement is true and correct." (Docket #1, ¶ 67).

18. On or around April 2, 2014, through his counsel, the Defendant reaffirmed "that the information provided in this bankruptcy case are true and accurate to the best of his knowledge." (Docket #20, ¶ 18).

19. Line 13 of Defendant's original Schedule B lists no stock ownership in any incorporated or unincorporated businesses.

20. Line 13 of Defendant's Amended Schedule B lists "Amstan LLC – Business Dissolved." (Docket #13, 2).

21. Defendant had an ownership interest in Amstan LLC on the Filing Date.

22. Defendant had an ownership interest in Asian Foods & Produce Distributors, Inc., successor in interest by name change to Ambient Pharmaceuticals & Services Inc. on the Filing Date.

23. Schedule C lists the following property exempt from the estate pursuant to 11 U.S.C. § 522(d)(5):

    a. A quarter-acre of land, Lot 12 Block 49 in Ocala, FL 34482

        i. Property value estimated at $3,800.00

        ii. Exemption value estimated at $0.00

        iii. This property is owned by the Defendant, not jointly with his wife (Schedule A);

    b. A quarter-acre of land, Lot 14 Block 47 in Ocala, FL 34482

        i. Property value estimated at $3,800.00

        ii. Exemption value estimated at $3,800.00

        iii. This property is owned by the Defendant, not jointly with his wife (Schedule A);

    c. Cash: Emergency Cash in Hand, located at the Defendant's residence

        i. Property value estimated at $1,900.00

        ii. Exemption value estimated at $1,900.00

        iii. This property is owned by the Defendant jointly with his wife (Schedule B);

    d. Checking Account XXX4667, located at Chase Bank, Garden City Park, NY
        i. Property value estimated at $1,600.00
        ii. Exemption value estimated at $1,600.00
        iii. This property is owned by the Defendant, not jointly with his wife (Schedule B);

    e. Checking Account XXXX2180, located at Chase Bank, Garden City Park, NY
        i. Property value estimated at $3,000.00
        ii. Exemption value estimated at $3,000.00
        iii. This property is owned by the Defendant jointly with his wife (Schedule B);

    f. Savings Account Savings XXXX4831, located at Chase Bank, Garden City Park, NY
        i. Property value estimated at $1,000.00
        ii. Exemption value estimated at $1,000.00
        iii. This property is owned by the Defendant jointly with his wife (Schedule B);

    g. Auto: BMW 530i 2006, located at the Defendant's residence
        i. Property value estimated at $15,000.00
        ii. Exemption value estimated at $7,650.00
        iii. This property is owned by the Defendant, not jointly with his wife (Schedule B);

    h. Auto: FORD 2006 EC2, located at the Defendant's residence
        i. Property value estimated at $4,400.00

      ii. Exemption value estimated at $4,400.00

      iii. This property is owned by the Defendant, not jointly with his wife (Schedule B).

24. 11 U.S.C. § 522(d)(5), as applicable on the filing date, provides that a debtor may exempt: "The debtor's aggregate interest in any property, not to exceed in value $1,225 plus up to $11,500 of any unused amount of the [homestead exemption]."

25. The total of all the exemptions pursuant to 11 U.S.C. § 522(d)(5) claimed by the Defendant and his wife together in Schedule C is $23,350.00.

26. The total of all the property claimed exempt pursuant to 11 U.S.C. § 522(d)(5) in which the Defendant's wife has any declared interest is $5,900.00.

27. The Defendant claimed at least $17,450.00 worth of property exempt pursuant to 11 U.S.C. § 522(d)(5).

28. The Defendant's Statement of Financial Affairs, filed on August 23, 2013 along with his voluntary petition, contains the following answers:

    a. To question 1, "$18,000.00 2013 Wife Monarch Realty; $0.00 2013 Wife Business Subway;"

    b. To question 2, "$0.00 Amstan LLC, Husband, Business Closed 11/20/2012; $0.00 Abraham Imports, Husband, Business Closed 2007;"

    c. To question 18, "None;"

    d. To question 19, "None."

29. On or around August 26, 2013, the Defendant and his wife submitted pay advices indicating that the Defendant's wife and joint debtor had earned $45,000 from Monarch Realty through July 25, 2013, at a rate of $3,000.00 every two weeks. (Docket #8, page 5).

30. On or around April 2, 2014, through his counsel, the Defendant claimed that his income was "de minimis" during the two years prior to his voluntary petition. (Docket #20, ¶ 36).

31. On June 6, 2014 and June 12, 2014 the Defendant filed amended Statements of Financial Affairs, which contained the following statement under oath: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." (Docket #25).

32. The Amended Statement of Financial Affairs contains the following answers:

    a. To question 1, "86,507.78 2012-2013 Amy Abraham Income from Employment; 15,129.00 2012 Stanley Abraham Income from Amstan LLC;"

    b. To question 2, "None;"

    c. To question 18, ". . . Ambient Pharmaceutical . . .;"

    d. To question 19, "Vinod G. Abraham, CPA; 4 Maryetta Court, Syosset, NY 11791 11/2012."

33. Defendant's original petition contains no mention of Ambient Pharmaceutical.

34. Defendant's original petition claims that Asian Foods & Produce Distributors, Inc., successor in interest by name change to Ambient Pharmaceuticals & Services Inc. is a partner of the joint debtors, owning a 100% interest.

35. Defendant's Amended Statement of Financial Affairs does not clearly indicate the complete EIN, Address, Nature of Business, or Beginning and Ending Dates, for Ambient Pharmaceutical.

36. The Defendant never told the Trustee about Ambient Pharmaceutical.

37. The Defendant did not disclose the identity of his accountant until his deposition.

38. The Defendant never provided the Trustee with the identity of his accountant before the case was closed.

39. When asked to list all businesses, whether incorporated or not, in which the Defendant was an officer, director, or managing agent from Janaury 1, 2007 to April 8, 2014, the Defendant listed the following:

    a. Amstan LLC – Inactive, Subway Restaurant

    b. Abramen Imports Inc. – Dissolved, Retail

    c. Ambient Pharmaceuticals & Services – Inactive, Pharmaceuticals

    d. Asian Food & Produce – Inactive, Wholefood Distributors

40. The Defendant does not possess closing bank account statements for any business, whether incorporated or not, in which the Defendant was an officer, director, or managing agent from January 1, 2007 to the present.

41. The Defendant does not possess any documents that support the allegation that the Defendant disclosed his relationship to both Amstan LLC and Abraham Imports on Schedule B.

42. The Defendant does not possess any documents that show the revenues and profits (whether or not there is any) of Amstan, LLC, Abraham Imports, or any other business, whether incorporated or not, in which Defendant was an officer, director, or managing agent, from January 1, 2007 to present.

43. The Defendant does not possess any documents to support the allegation that at least $8,675, but not more than $12,725, worth of items claimed exempt pursuant to 11 U.S.C. § 522(d)(5) on Schedule C belongs to Amy Abraham.

44.     The Defendant does not possess any documents to support the allegation that the lease described in Paragraph "29" of the Amended Complaint had been terminated before the petition was filed.

### VIII. ISSUES OF FACT TO BE LITIGATED

1.     Whether the contradictions described in the previous section constitute false statements.

2.     If they constitute false statements, whether those statements were made under oath.

If they constitute false statements under oath, whether 1) The Debtor(s) knew the statement(s) to be false or the statement(s) were made with reckless disregard for their truth and 2) The statement(s) were made with fraudulent intent and 3) The statement(s) related materially to the bankruptcy case. Whether the Plaintiff lent money to the Defendant.

3.     Whether the Plaintiff and the Defendant discussed how the funds would be used prior to any such loan.

4.     What representations the Defendant made to the Plaintiff prior to any such loan.

5.     Whether the Plaintiff relied on any representations made by the Defendant in deciding whether to make any such loan.

6.     Whether the Plaintiff's reliance on any representations made by the Defendant in deciding whether to make any such loan was justifiable.

7.     Whether the Plaintiff's reliance on any representations made by the Defendant caused the Plaintiff to deliver funds to the Defendant.

8.     Whether the Defendant acted as a "mere conduit" for payments to a non-party,

Thomas John.

9.  Whether, if the alleged deposits made by Plaintiff to Defendant's account were loans, the "loans" are dischargeable in Defendant's bankruptcy.

### IX. ISSUES OF LAW TO BE DETERMINED

1.  Whether, as a matter of law, the contents of a debtor's schedule B are material to his bankruptcy case.

2.  Whether, as a matter of law, the contents of a debtor's schedule C are material to his bankruptcy case.

3.  Whether, as a matter of law, the debtor's disclosure of his prior income on his statement of financial affairs is material to his bankruptcy case.

4.  Whether, as a matter of law, the debtor's disclosure of accounting professionals employed in the two years preceding the filing of the petition is material to his bankruptcy case.

5.  Whether, as a matter of law, the Plaintiff has standing to object to the Defendant's discharge if the Defendant acted as a "mere conduit" for a payment to another person.

6.  6.  Whether any errors and/or omissions on Defendant's bankruptcy petition were made with fraudulent intent or reckless disregard for the truth.

### X. PLAINTIFF'S CASE

1.  Non-dischargeability of debt

    a.  In or around August 2009, the Plaintiff lent $75,000 to the Defendant, which she was told would be used to invest in real estate.

    b.  She paid the $75,000 to the Defendant by two large payments: a $50,000 check and a $25,000 wire transfer.

    c.  The Defendant instead used the money lent to invest in a Subway sandwich

    franchise, which ultimately failed.

  d. If the Plaintiff had known that the funds would be used for a Subway sandwich franchise, she would not have lent the money to the Defendant.

  e. The Plaintiff relied on the Defendant's representations that the money would be used for real estate investing because he was a licensed real estate agent and the son-in-law of a friend of hers.

  f. Subsequent to the making of the loan, the Defendant has denied that he ever borrowed money from the Plaintiff, which indicates that he never intended to pay her back.

  g. Because the Defendant defrauded the Plaintiff in order to obtain $75,000 from her in or around August 2009, the Defendant is not entitled to discharge his obligation to repay that amount, pursuant to 11 U.S.C. § 523(a)(2)(A).

2. Denial of discharge

  a. The Defendant was required by the Bankruptcy Code to, and actually did, swear under penalty of perjury that the information contained in his initial voluntary petition, schedules, and statement of financial affairs was true and correct to the best of his knowledge.

  b. The Defendant failed to disclose his ownership interest in no fewer than three separate businesses on his schedule B, which lists all of the Debtor's personal property.

  c. The Defendant knew on the day that he signed his petition, and on the day that the petition was filed, that he had an ownership interest in no fewer than three separate businesses.

d.  The Defendant's assets on the day the petition was filed constitute the bankruptcy estate, which the chapter 7 trustee is charged with liquidating for the benefit of creditors, so any omissions or misstatements on Schedule B are material to a case under the Bankruptcy Code.

e.  The Defendant claimed an exemption, pursuant to 11 U.S.C. § 522(d)(5), of property in which his wife had no ownership interest, that was valued well in excess of the $12,725 permitted to him by that statute.

f.  The Defendant knew on the day that he signed his petition, and on the day that the petition was filed, that the property, in which his wife had no ownership interest, included on his Schedule C was worth more than $12,725. The Defendant is charged with knowledge of the limit imposed by 11 U.S.C. § 522(d)(5).

g.  Exempt property is removed from the bankruptcy estate, and is therefore unavailable for distribution to creditors by a chapter 7 trustee, so any omissions or misstatements on Schedule C are material to a case under the Bankruptcy Code.

h.  The Defendant stated on his statement of financial affairs that he had not employed an accountant during the two years preceding the filing of his bankruptcy case.

i.  The Defendant also stated on his statement of financial affairs that he had received no income from employment or from the operation of a business in the two years preceding the filing of his bankruptcy case.

j.  The Defendant knew on the day he signed the petition, and on the day that the

  petition was filed, that he had employed an accountant, both for his personal accounting needs and those of his various businesses, for the two years preceding the filing of his bankruptcy case and throughout his bankruptcy case.

k. The Defendant knew on the day he signed the petition, and on the day that the petition was filed, that he had received income from employment or the operation of a business, during the two years preceding the filing of his bankruptcy case.

l. A debtor's employment of an accounting professional provides significant information about the sophistication of the debtor and his business pursuits. It also represents a source of detailed information about the debtor's financial transactions, and those of the businesses he controls. Therefore, omitting this information from the statement of financial affairs is material to a case under the Bankruptcy Code.

m. A debtor's prepetition income provides information about the events leading up to a bankruptcy filing, and may shed light on assets that could have been concealed or transferred in the years leading up to the filing. Regardless of whether the Defendant has, in fact, concealed or transferred any assets that would be assets of the estate in the years leading up to the filing of the petition, information that could reveal the presence or absence of such concealment and/or transfer is material to a case under the Bankruptcy Code.

n. Because the Defendant made numerous false statements under oath in this case regarding issues material to this case, and because he knew at the time he

        made those false statements that they were false, he is not entitled to a discharge of any of his debts pursuant to 11 U.S.C. § 727(a)(4).

    o.  To the extent that the Defendant claims he did not know the statements contained in the schedules and statement of financial affairs were false because he did not read or did not understand them, or because he relied on the advice of his counsel, such actions constitute reckless disregard for the truth in the case of the Defendant, and therefore the Defendant is not entitled to a discharge of any of his debts pursuant to 11 U.S.C. § 727(a)(4).

## XI.    **DEFENDANT'S CASE**

1.    The did not defraud the Plaintiff. The two deposits totaling $75,000.00 received from Plaintiff to Defendant's account were immediately transferred to Defendant's father in law, Stanley John. The deposits were always intended to go to Stanley John from Janet Stuart. Stuart and John have had a long standing business relationship whereby Stuart would lend money to John and he would pay her back with interest. Even if Plaintiff did lend this money to Defendant (as she claims), Plaintiff has no contract or promissory note for repayment. This transaction would be barred by the statute of frauds and Plaintiff could never obtain a judgment against Stanley Abraham.

2.    Any errors or omissions on Defendant's bankruptcy petition were oversights that were either rectified by subsequent amendments and/or de minimis and were not done with reckless disregard or intent to defraud.

3.    Defendant and co-debtor were completely forthright and revealing concerning all of their assets in this bankruptcy case.

4. If Defendant and/or his co-debtor/wife did declare more exemptions than allowed then, this was done in honest error, did not cause any prejudice to any creditors or other parties and is not grounds for denying the Debtors' discharge .

5. Plaintiff/Janet Stuart's actions against Stanley Abraham are fraudulent, directed only to cause him undue burden and calculated to coerce a payment from him to her to settle this matter.

6. Debtors, Stanley and Amy Abraham submitted to the Chapter 7 Trustee, Alan Mendelsohn, their jointly filed federal and state tax returns for the years 2010, 2011, 2012. Each of these returns exhibits Vinod G. Abraham C.P.A. of 210 Willis Ave. Syosset, N.Y. 11791 as their accountant and tax preparer.

7. All real and personal property of the Debtors is considered joint/marital by the Debtors. If they were to divorce all properties listed in the bankruptcy schedules would considered as marital property. Any inaccurate listing in schedule C has not negatively impacted creditors. The information is clearly listed. The Trustee did not object. It would render an illogical outcome to allow Plaintiff to revoke Defendant's discharge based on exemptions when she will not be able to obtain a judgment against Defendant.

Dated:  Brooklyn, NY
         March 3, 2015

                                  Respectfully Submitted,

                                  Law Office of Gregory Messer
                                  Attorneys for Janet Stuart

                           By: _____
                                  Joel Alan Gaffney

Dated:  Jamaica, NY

March 3, 2015

                                              Brian McCaffrey, P.C.
                                              Attorneys for Stanley Abraham

                                      By:    __/s/ Brian McCaffrey_____

                                                     Brian McCaffrey